## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Milton Ciplet, Individually and on behalf of all others similarly situated, | ) ) ) Case No. 08-cv-4580 (RMB) |
| Plaintiff, | ) ) ) |
| - against - | ) ) ) |
| JP Morgan Chase & Co. and J.P. Morgan Securities, Inc., | ) ) ) |
| Defendants. | ) ) |
| Mark Scharff, Pine Sash Door & Lumber Co., Inc., Mark Scharff & Associates LLC, 2170 Mill Avenue LLC, 6202-6217 Realty LLC, Mark Scharff ITF Michael Scharff, Mark Scharff ITF Daniel Scharff and Mark Scharff ITF Ariel Scharff, | ) ) Case No. 08-cv-5026 (RMB) ) ) ) ) ) |
| Plaintiffs | ) ) ) |
| - against - | ) ) ) |
| JPMorgan Chase Bank & Co., J.P. Morgan Securities, Inc., and Chase Investment Services Corp., | ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE ASSIF GROUP FOR CONSOLIDATION OF ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................... 1

FACTUAL BACKGROUND ..................................................................... 2

ARGUMENT .............................................................................................. 4

    I.     THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ........4

    II.    THE ASSIF GROUP SHOULD BE APPOINTED LEAD PLAINTIFF .............. 5

        A.    The Procedure Required By the PSLRA .................................................... 5

        B.    The Assif Group Satisfies The Lead Plaintiff Requirements Of The PSLRA ............................................................................................ 6

            1.    The Assif Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff ............................................................ 6

            2.    The Assif Group Have The Requisite Financial Interest In The Relief Sought By The Class ........................................................ 6

            3.    The Assif Group Otherwise Satisfy Rule 23 ................................... 8

            4.    Aggregation of the Assif Group's Financial Interests Is Appropriate ................................................................................10

    III.    THE ASSIF GROUP'S CHOICE OF COUNSEL SHOULD BE APPROVED .. 12

CONCLUSION ......................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

<u>Case</u>                                                                                                   <u>Page</u>

*Albert Fadem Trust v. Citigroup, Inc.,*
    239 F. Supp. 2d 344 (S.D.N.Y. 2002)..................................................................6, 9

*Clair v. DeLuca*
    232 F.R.D. 219, 222 (W.D. Pa. 2005) ............................................................5

*In re American Bank Note Holographics Secs. Litig.,*
    93 F. Supp. 2d 424 (S.D.N.Y. 2000).................................................................11

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002).........................................................................7

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001)..........................................................................6

*In re Centerline Holding Co. Sec. Litig.,*
    2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008)...........................................11

*In re Fuwei Films Sec. Litig.,*
    247 F.R.D. 432 (S.D.N.Y. 2008) ...........................................................7, 9, 10

*In re Tarragon Corp. Sec. Litig.,*
    2007 U.S. Dist LEXIS 91418 (S.D.N.Y. Dec. 6, 2007)...........................................11

*In re UBS Auction Rate Sec. Litig.*
    2008 U.S. Dist. LEXIS 56016 (S.D.N.Y.) ....................................................10

*Johnson v. Celotex Corp.*
    899 F. 2d 1281 (2d Cir. 1990)......................................................................4

*Kaplan v. Gelfond*
    240 F.R.D. 88, 91 (S.D.N.Y. 2007) .............................................................4

*Lax v. First Merchs. Acceptance Corp.,*
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. 1997)...................................................7

*Reimer v. Ambac Fin. Group, Inc.,*
    2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008)..........................................11

*Vladimir v. Bioenvision,*
    2007 U.S. Dist. LEXIS 93470 (S.D.N.Y. Dec. 21, 2007).........................................11

*Weltz v. Lee,*
  199 F.R.D. 129 (S.D.N.Y. 2001) .................................................................................. 11


**Statutes**

15 U.S.C. § 78u-4(a) ......................................................................................... passim

Fed. R. Civ. P. 42(a) ...........................................................................................1, 4

Fed. R. Civ. P. 23 .................................................................................................... 5

Fed. R. Civ. P. 6(a) ................................................................................................. 6

TABLE OF AUTHORITIES

## INTRODUCTION

Class members Thomas C. Assif, Kismet TMF Holdings, LLC ("Kismet"), and SKS Capital Partners, LLC ("SKS Capital") (collectively, "the Assif Group" or "Movants") move this Court for entry of an order: (1) consolidating the related actions before the Court; (2) appointing them Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and; (3) approving their selection of Girard Gibbs LLP ("Girard Gibbs") to serve as Lead Counsel, Stueve Siegel Hanson LLP ("Stueve Siegel") to serve as Co-Lead Counsel, and Seeger Weiss LLP ("Seeger Weiss") to serve as Liaison Counsel pursuant to the PSLRA.

Prior to selecting a Lead Plaintiff, the Court must decide whether to consolidate the two related actions pending before it, *Ciplet v. JP Morgan Chase & Co., et al.*, Case No. 08-cv-4580 (RMB), and *Scharff v. JPMorgan Chase Bank & Co., et al.*, Case No. 08-cv-5026 (WHP). *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). As soon as practicable after a decision on consolidation has been rendered, the Court must appoint as the Lead Plaintiff the movant or group of movants with the largest financial interest of those seeking such appointment in the litigation and which otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See id.*

The Assif Group submits that the above-captioned actions should be consolidated because they each involve the same defendants and substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a). The Assif Group further submits that it should be appointed Lead Plaintiff because it: (1) timely filed a motion for appointment of Lead Plaintiff; (2) has a substantial financial interest in the action, as its members collectively hold $2,375,000 worth of illiquid auction rate securities they purchased from JP Morgan Chase & Co. and its affiliates (collectively "JP Morgan") during the Class Period; and (3) will adequately represent the interests of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Because the presumptive Lead Plaintiff selects counsel to represent the class under the PSLRA, and Girard Gibbs, Stueve Siegel and Seeger Weiss are experienced in the prosecution of securities class actions and will adequately represent the interests of Class members, the Court should also approve the Assif Group's selection of counsel to represent the Class.

1

## **FACTUAL BACKGROUND**

Auction rate securities are long-term variable-rate instruments. Their interest rates reset at periodic auctions, generally held every 7, 28 or 35 days. Auction rate securities include collateralized student loan debt obligations, preferred shares of closed-end mutual funds, and long-term municipal debt. Despite the long-term nature of these instruments, broker-dealers marketed auction rate securities to investors as cash-equivalent alternatives to money-market funds.

JP Morgan was a substantial broker-dealer of auction rate securities. JP Morgan represented to investors that auction rate securities were the same as cash and were highly liquid, short-term vehicles suitable for any investor with at least $25,000 of available cash and as little as one week in which to invest.

JP Morgan knew, but failed to disclose, material facts about the auction market and the auction rate securities it sold to investors including that: (1) auction rate securities were not cash alternatives, like money market funds, but were instead, long-term financial instruments with 30-year maturity dates, or longer; (2) auction rate securities were only liquid at the time of sale because JP Morgan and other broker-dealers were artificially supporting and manipulating the auction market to maintain the appearance of liquidity and stability; (3) JP Morgan and other broker-dealers routinely intervened in auctions for their own benefit, to set rates and prevent auctions from failing; and (4) JP Morgan continued to market auction rate securities as liquid investments, even after it had determined that it and other broker-dealers were likely to withdraw their "support" for the periodic auctions which would result in a "freeze" of the auction rate securities market. As a result of these material non-disclosures, the value of the auction rate securities JP Morgan sold was not as represented.

On February 13, 2008, all of the major broker-dealers, including JP Morgan, withdrew their "support" for the auction rate securities market, causing 87 percent of all auctions to fail. The collapse of the auction rate securities market rendered more than $300 billion of outstanding securities illiquid. An analyst for Citigroup, the largest underwriter of auction rate securities,

subsequently predicted that the auction rate securities market will "cease to exist" entirely and

that the collapse of the auction rate securities market could cause investors to "stop using the

services of their brokerage and/or asset management firms as a result of a loss of trust." Martin

Z. Braun, "Auction-Rate Market Will 'Cease to Exist,' Citi Says (Update2)," *Bloomberg* (April

15, 2008).[1]

     JP Morgan was handsomely compensated for its participation in the auction rate

securities market.  JP Morgan received significant underwriting and broker-dealer fees from

issuers of auction rate securities, as well as substantial commissions on the sales of auction rate

securities from investors.

     The auction rate securities debacle has caught the attention of federal, state and industry

regulators.  Investigations are now being conducted by the U.S. Securities and Exchange

Commission, the Financial Industry Regulatory Authority, the State of New York, and a multi-

state task force including Florida, Georgia, Illinois, Massachusetts, Missouri, New Hampshire,

New Jersey, Texas, Virginia and Washington.[2]  Congress has announced that it will hold

hearings on the collapse of the auction rate securities market in September.[3]  JP Morgan also has

received a subpoena from the Attorney General of the State of New York.[4]  To date, these

investigations have resulted in litigation against auction rate securities broker-dealers UBS and

Merrill Lynch by Massachusetts, New York and Texas.

     Investors are also pursuing their rights.  This class action asserts claims under Sections

10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of all persons and entities who

purchased auction rate securities from JP Morgan between March 25, 2003 and February 13,

---

[1] http://www.bloomberg.com/apps/news?pid=20601213&refer=home&sid=aa6nZyh.SrNU.

[2] http://www.bloomberg.com/apps/news?pid=20601087&refer=home&sid=awpbOuGDDcs8.

[3] http://www.house.gov/apps/list/press/financialsvcs_dem/press073108.shtml.

[4] http://www.washingtonpost.com/wp-dyn/content/article/2008/04/17/AR2008041704564.html.

2008 (the date of the collapse of the auction rate securities market), inclusive, and continued to hold such securities as of February 13, 2008.

## ARGUMENT

### I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42(a). Now pending before this Court are two related actions—*Ciplet* and *Scharff*—each of which asserts class claims for alleged violations of the Exchange Act on behalf of investors who purchased auction rate securities from JP Morgan during a similar Class Period (March 25, 2003 to February 13, 2008 in the *Scharff* action, and May 16, 2003 to February 13, 2008 in the *Ciplet* action) and held those securities when the auction market collapsed on February 13, 2008.[5] The complaints make substantively similar allegations. The actions name common defendants (JP Morgan Chase & Co. and J.P. Morgan Securities, Inc.) and involve the same factual and legal issues, namely, whether plaintiffs purchased auction rate securities from JP Morgan as a result of defendants' allegedly false and misleading statements and omissions, and whether defendants' conduct violates Sections 10(b) of the Exchange Act. Consolidation is appropriate where, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). Therefore, the *Ciplet* and *Scharff* actions should be consolidated pursuant to Rule 42(a).

### II.    THE ASSIF GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Assif Group holds $2,375,000 in auction rate securities they purchased from JP Morgan during the Class period. The Assif Group respectfully submits that it should be appointed Lead Plaintiff because it has complied with all of the PSLRA's requirements, has

---

[5] The existence of slight variations in the class periods and defendants does not preclude consolidation of the actions. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

demonstrated the largest financial interest in this litigation, and otherwise meets the relevant requirements of Fed. R. Civ. P. 23.

### A.    The Procedure Required By the PSLRA

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i). The plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the complaint, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Notice of the first-filed action under the PSLRA relating to JP Morgan's sale of auction rate securities was published on Business Wire on June 5, 2008.[6] *See* Declaration of Jonathan K. Levine In Support of the Motion of the Assif Group for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Levine Dec."), Ex. A. Within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

The PSLRA also provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

---

[6] Prior to the filing of *Ciplet*, another related class action, *Silverman v. JP Morgan Chase & Co.*, 08-cv-3177 (GEL) (S.D.N.Y.), was filed in this Court on March 31, 2008. A PSLRA notice regarding the *Silverman* action was published the same day. On April 11, 2008, *Silverman* was voluntarily dismissed without prejudice. Because of the dismissal, the PLSRA notice for the *Silverman* action is inoperative here. *See Clair v. DeLuca*, 232 F.R.D. 219, 222 (W.D. Pa. 2005) (noting that where an initial class action had been dismissed, plaintiffs in a later-filed class action could not rely on the PSLRA notice published for the initial case).

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See generally Albert Fadem Trust v. Citigroup, Inc.,* 239 F.

Supp. 2d 344, 347 (S.D.N.Y. 2002) (Swain, J.).

**B.    The Assif Group Satisfies The Lead Plaintiff Requirements Of The PSLRA**

    **1.    The Assif Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff**

As notice of the filing of the initial action was published on June 5, 2008, the time period

in which class members may move to be appointed lead plaintiff in this case expired on August

4, 2008. *See* Levine Decl., Ex. A; 15 U.S.C. § 78u-4(a)(3)(A) and (B); Fed. R. Civ. P. 6(a). This

application, originally filed on August 4, 2008, is thus timely. Movants have reviewed the

complaint and are willing to serve as representative parties on behalf of the Class. *See* Levine

Decl., Ex. B (Assif certification), C (Lakhanpal certification). In addition, Movants have

selected and retained competent counsel to represent themselves and the Class. *See id.*, Ex. D

(firm resume of Girard Gibbs), Ex. E (firm resume of Stueve Siegel), Ex. F (firm resume of

Seeger Weiss). Accordingly, the Assif Group has satisfied the requirements of 15 U.S.C. § 78u-

4(a)(3)(B), and the Court should approve its application for appointment as Lead Plaintiff and its

selection of counsel to represent the Class.

    **2.    The Assif Group Has The Requisite Financial Interest In The Relief Sought By The Class**

Pursuant to the PSLRA, identification of the most adequate plaintiff "begins with the

identification of the movant with 'the largest financial interest in the relief sought by the class.'"

*In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). "The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest,' and neither the Supreme Court nor the Second Circuit has articulated such a method." *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008). To calculate each movant's financial interest in the litigation, the Court should "select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4. Generally, courts have considered the following factors in determining a movant's financial interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *In re Fuwei Films*, 247 F.R.D. at 437 (citing *Lax v. First Merchs. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, *17 (N.D. Ill. 1997)).

The Assif Group has a substantial financial interest in this case. Mr. Assif holds $975,000 in auction rate securities he purchased from JP Morgan during the Class Period. *See* Levine Decl., Ex. B, Attachment A. Kismet and SKS Capital, real estate investment companies managed by Ashish Lakhanpal, collectively hold $1,400,000 in auction rate securities they purchased from JP Morgan during the Class Period. *See* Levine Decl., Ex. C, Attachment A. JP Morgan had not disclosed the risks associated with auction rate securities prior to selling them to Movants.

At the close of the Class period on February 13, 2008, the Assif Group held auction rate securities with a par value of $2,375,000. *See* Levine Decl., Ex. G (analysis of the Assif Group's Class Period transactions). Upon the collapse of the auction market at the end of the Class Period, all of those securities were rendered illiquid, precluding Movants from selling their shares on the auction market. None of those securities has been redeemed since the end of the Class Period.

Because JP Morgan sold auction rate securities as highly liquid cash equivalents, and these securities are now illiquid, a movant's financial interest can be measured conservatively by the amount of the movant's investment that remains illiquid—in other words, the par value of the auction rate securities that were purchased from JP Morgan during the Class Period that have not been redeemed. Under this formulation, the Assif Group's cumulative financial interest for purposes of this motion, is $2,375,000—the combined par value of the shares of now-illiquid auction rate securities Movants purchased from JP Morgan during the Class Period and held at the end of the Class Period that were not redeemed after the Class Period. Given the nature of the securities at issue, this is an objective and conservative method for calculating the financial interest of each movant seeking appointment as Lead Plaintiff under the PSLRA.

The Assif Group knows of no other applicant with a greater financial interest seeking appointment as Lead Plaintiff in this matter. It thus satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3.    The Assif Group Otherwise Satisfies Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two—typicality and adequacy— concern the personal characteristics of the class representative. Consequently, a court deciding a lead plaintiff motion should limit its inquiry to the typicality and adequacy prongs of Rule 23(a),

as "the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *In re Fuwei Films,* 247 F.R.D. at 436 (quotations omitted); *see also Fadem Trust,* 239 F. Supp. 2d at 347 ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). Movants satisfy the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists where the plaintiff's claims arise from the same course of events and are based on similar legal theories as the claims of the class members. *See, e.g., In re Fuwei Films,* 247 F.R.D. at 436. Typicality does not require that there be no factual differences between the class representative and the class members, because it is the generalized nature of the claims asserted that determines whether the class representative is typical. *See id.* ("The lead plaintiff's claims need not be identical to the claims of the class to satisfy the typicality requirement.") (citations omitted).

Movants are typical because, like all other Class members, they: (1) purchased auction rate securities from JP Morgan during the Class Period as a result of JP Morgan's allegedly materially false and misleading statements and omissions concerning the liquidity and risk characteristics of the auction rate securities and the auction market; (2) held auction rate securities on the date that JP Morgan and all other broker-dealers withdrew their "support" for the auction market; and (3) are consequently unable to sell their auction rate securities at par value. As the Assif Group's claims and the claims of other Class members arise out of the same course of events, the Assif Group satisfies the typicality requirement.

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its adequacy inquiry to the existence of any conflict between the proposed Lead Plaintiff's interests and the interests of Class members. A proposed lead plaintiff is adequate where: (1) there is no conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice of counsel is qualified, experienced and generally able to conduct the proposed litigation. *In re*

9

*Fuwei Films*, 247 F.R.D. at 436 (citations omitted). Additionally, the lead plaintiff should have a "sufficient interest in the outcome to ensure vigorous advocacy." *Id.*

Movants are adequate representatives of the Class, as their interests are aligned with those of Class members, and there is no evidence of any antagonism between their interests. Like Class members, the Assif Group acquired now-illiquid auction rate securities based on JP Morgan's material non-disclosures and misleading statements about auction rate securities and the auction market. Further, the Assif Group has taken significant steps that demonstrate it will protect the interests of the Class: it has retained competent and experienced counsel to prosecute these claims and to continue their investigation into the facts giving rise to this action. The Assif Group's proposed counsel are qualified, experienced and able to conduct this complex litigation in a professional manner. The Assif Group is not subject to any unique defenses or other legal hindrances. Finally, the Assif Group, which currently holds $2,375,000 worth of illiquid auction rate securities purchased from JP Morgan during the Class period, has a sufficient interest in the outcome of this case to ensure vigorous advocacy. For these reasons, the Assif Group *prima facie* satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### 4.    Aggregation of the Assif Group's Financial Interests Is Appropriate

The PSLRA on its face contemplates appointment of more than one class member as lead plaintiff, so long as the investor group will be capable of representing the interests of the class. The PSLRA provides that a court "shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). Under the PSLRA, a "person or group of persons" may be an adequate lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Courts in this district routinely permit aggregated investors to serve as Lead Plaintiff. *See, e.g., In re UBS Auction Rate Sec. Litig.*, 2008 U.S. Dist. LEXIS 56016, at *13 (S.D.N.Y.)

10

(McKenna, J.) (allowing aggregation of unrelated investors in auction rate securities class action "based upon the plain meaning of the unambiguous statutory language" of the PSLRA"); *Reimer v. Ambac Fin. Group, Inc.*, 2008 U.S. Dist. LEXIS 38729, *7-8 (S.D.N.Y. May 9, 2008) (Buchwald, J.) (explaining that disallowing unrelated class members to aggregate and serve as lead plaintiff is "now the minority view"); *In re Centerline Holding Co. Sec. Litig.*, 2008 U.S. Dist. LEXIS 36406, *8 (S.D.N.Y. May 5, 2008) (Schneidlin, J.) ("[W]here aggregation would not displace an institutional investor as presumptive lead plaintiff based on the amount of losses sustained, a small group of unrelated investors may serve as lead plaintiff, assuming they meet the other necessary requirements."); *In re Tarragon Corp. Sec. Litig.*, 2007 U.S. Dist LEXIS 91418, *2 (S.D.N.Y. Dec. 6, 2007) (Castel, J.) ("The issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may."); *In re American Bank Note Holographics Secs. Litig.*, 93 F. Supp. 2d 424, 436 (S.D.N.Y. 2000) (McMahon, J.) ("The nomination of a group of investors as co-lead plaintiffs is specifically contemplated by the PSLRA."); *Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001) (Batts, J.) ("The majority of courts . . . have permitted the aggregation of claims for the purposes of becoming lead plaintiff."); *Vladimir v. Bioenvision*, 2007 U.S. Dist. LEXIS 93470, *40-42 (S.D.N.Y. Dec. 21, 2007) (Peck, M.J.).  Courts recognize, however, that appointment of an aggregate lead plaintiff may be "inappropriate where the group is too large." *Reimer*, 2008 U.S. Dist. LEXIS 38729, at *8 (citing *Weltz*, 1999 F.R.D. at 133).  The group must not be "so cumbersome as to deliver the control of the litigation into the hands of the lawyers." *Id.*

        The Assif Group is comprised of three members, two of which are related to each other. Kismet and SKS Capital are real estate investment companies, both of which are managed by Mr. Lakhanpal.  Mr. Assif purchased his auction rate securities privately.  As a result, there are only two decision-makers in the Assif Group.  Movants have informed themselves about this litigation, and expect to participate directly in the lawsuit.  They have also stated their willingness to serve as Lead Plaintiff along with other qualified class representatives.  *See* Levine Decl., Ex. B at ¶ 3, Ex. C at ¶ 3.  As a group, they are neither too large nor too

cumbersome to manage this litigation effectively. Accordingly, aggregation of their claims is appropriate for purposes of the Lead Plaintiff appointment.

## III.    THE ASSIF GROUP'S CHOICE OF COUNSEL SHOULD BE APPROVED

Due to the complexity of this litigation, the Assif Group has selected three law firms to represent the class in this matter, subject to Court approval: Girard Gibbs as Lead Counsel, Stueve Siegel as Co-Lead Counsel, and Seeger Weiss as Liaison Counsel.

As demonstrated by its firm resume, Girard Gibbs is experienced in litigating securities class and non-class actions and has successfully prosecuted numerous complex class cases on behalf of injured investors. *See* Levine Decl., Ex. D. Girard Gibbs has been at the forefront of the investigation into the auction rate securities market since its collapse in February 2008. Girard Gibbs has been contacted by more than 2,000 auction rate securities investors, has interviewed Class members, and has retained consultants knowledgeable in auction rate securities. Girard Gibbs is thus in a unique position to assess the claims, damages and needs of Class members, and is well-qualified to represent their interests. Girard Gibbs has access to numerous individuals, businesses and charities that would be willing to provide testimony or participate as non-lead plaintiffs if necessary to further the interests of the case. This factor is critical here, as the case alleges widespread, systemic non-disclosures and misrepresentations. Girard Gibbs also has been appointed as Lead Counsel in auction rate securities class actions against UBS Securities, Wachovia Corporation and Raymond James Financial, and is fully committed to devoting the resources needed to vigorously represent the interests of auction rate investors.

Like Girard Gibbs, Stueve Siegel has taken a lead role in investigating and prosecuting cases related to auction rate securities. Since the collapse of the auction market in February 2008, Stueve Siegel in partnership with other firms has taken the initiative in researching the auction rate securities industry, investigating potential claims, drafting the pertinent documents for the commencement of the litigation, and contacting investors who have requested advice

from an attorney. As evidenced by its firm resume, Stueve Siegel has extensive experience prosecuting and litigating class and complex litigation in courts across the country, including securities matters. *See* Levine Decl., Ex. E. Stueve Siegel also has been appointed as Lead Counsel in an auction rate securities class action against E*TRADE Financial Corporation. Given its experience with complex litigation and its familiarity with the auction rate securities market, Stueve Siegel is well-equipped to serve as Co-Lead Counsel in this litigation.

Over the past decade, Seeger Weiss has emerged as one of the leading plaintiffs' firms in the United States, as demonstrated by its inclusion in the National Law Journal's 2007 "Plaintiff's Hot List" of nationally elite firms. With approximately 30 lawyers operating out of offices in four states, the firm's expertise in the areas of class action and mass tort litigation has been recognized by courts throughout the U.S. As reflected in the firm biography, Seeger Weiss has been appointed to numerous positions of leadership in a variety of multidistrict and complex litigations including securities fraud class actions. *See* Levine Decl., Ex. F. Currently, Seeger Weiss serves on the Plaintiffs' Steering Committee in the *IPO Securities Litigation*, one of the largest and most significant coordinated securities fraud prosecutions in United States history. Seeger Weiss also holds or has held leadership roles in other securities matters, including: *PixelPlus Securities Litigation*, *Sim, et al. v. Aspen Technology, et al.*, *Babcock v. Citigroup*, *Victor v. UBS Paine Weber, et al.*, and *ATEC Group, Inc. Class Action*. Along with Girard Gibbs and Stueve Siegel, Seeger Weiss has been communicating with Class members and investigating the claims alleged in this case since the collapse of the auction market.

Accordingly, the Assif Group's selection of Lead, Co-Lead and Liaison Counsel should be approved.

///

///

///

///

///

**CONCLUSION**

For the foregoing reasons, the Assif Group satisfies the requirements of the PSLRA for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). The Assif Group respectfully requests that this Court: (1) consolidate the related actions; (2) appoint the Assif Group as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and (3) approve its selection of Girard Gibbs as Lead Counsel, Stueve Siegel as Co-Lead Counsel, and Seeger Weiss as Liaison Counsel.

DATED: August 21, 2008                    Respectfully submitted,

                                          **GIRARD GIBBS LLP**

                                          By:   *Jonathan K. Levine*
                                              Jonathan K. Levine (JL-8390)

                                          Daniel C. Girard
                                          Aaron M. Sheanin
                                          Christina H. C. Sharp
                                          601 California Street, 14th Floor
                                          San Francisco, CA 94108
                                          Telephone: (415) 981-4500
                                          Facsimile: (415) 981-4846

                                          **Proposed Lead Counsel**

                                          Norman E. Siegel
                                          **STUEVE SIEGEL HANSON LLP**
                                          460 Nichols Road, Suite 200
                                          Kansas City, MO, 64112
                                          Telephone: (816) 714-7100
                                          Facsimile: (816) 714-7101

                                          **Proposed Co-Lead Counsel**

                                          Christopher A. Seeger (CS-4880)
                                          Stephen A. Weiss (SW-3520)
                                          David R. Buchanan (DB-6368)
                                          **SEEGER WEISS LLP**
                                          One William Street, 10th Floor
                                          New York, NY 10004
                                          Telephone: (212) 584-0700

14

Facsimile: (212) 584-0799

**Proposed Liaison Counsel**

## CERTIFICATE OF SERVICE

I, Jonathan K. Levine, hereby certify that on August 21, 2008, I caused the following

document(s) to be filed electronically with the United States District Court for the Southern

District of New York through the Court's mandated ECF service:

1.    **MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
      THE ASSIF GROUP FOR CONSOLIDATION OF ACTIONS,
      APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF
      SELECTION OF COUNSEL**

Counsel of record are required by the Court to be registered e-filers, and as such are

automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of August, 2008 at San Francisco, California.


_____/S/ Jonathan K. Levine_____

16