UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Milton Ciplet, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>JP Morgan Chase & Co. and J.P. Morgan Securities, Inc.,<br><br>Defendants. | Case No. 08-cv-4580 (RMB) |
| Mark Scharff, Pine Sash Door & Lumber Co., Inc., Mark Scharff & Associates LLC, 2170 Mill Avenue LLC, 6202-6217 Realty LLC, Mark Scharff ITF Michael Scharff, Mark Scharff ITF Daniel Scharff and Mark Scharff ITF Ariel Scharff,<br><br>Plaintiffs<br><br>- against -<br><br>JPMorgan Chase Bank & Co., J.P. Morgan Securities, Inc., and Chase Investment Services Corp.,<br><br>Defendants. | Case No. 08-cv-5026 (RMB) |

**RESPONSE OF THE ASSIF GROUP TO COMPETING MOTIONS FOR CONSOLIDATION OF ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

ARGUMENT ............................................................................................................................. 4

I. THE COURT SHOULD CONSOLIDATE THE ACTIONS FOR ALL PURPOSES. ................................. 4

II. THE COURT SHOULD APPOINT THE ASSIF GROUP LEAD PLAINTIFF. ...................................... 4

    A. The Procedure Required by the PSLRA. ................................................................. 4

    B. The Assif Group Is Entitled to the Statutory Presumption of Being the Most Adequate Plaintiff. .................................................................................................... 5

        1. *The Assif Group Has Complied With the PSLRA.* ............................................. 5

        2. *The Assif Group Has the Largest Financial Interest.* ........................................ 5

        3. *The Assif Group Is Better Suited to Be Lead Plaintiff Under Rule 23* ............. 8

            a. Typicality. ...................................................................................................... 8

            b. Adequacy. ................................................................................................... 10

III. THE COURT SHOULD APPROVE THE ASSIF GROUP'S CHOICE OF COUNSEL. ........................ 12

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

## Cases

*In re Cavanaugh*
  306 F.3d at 730 .................................................................................................. 5

*In re Cendant Corp. Litig.*
  264 F.3d 201 (3d Cir. 2001) ............................................................................... 5

*In re Initial Public Offering Securities Litig.*
  214 F.R.D. 117 (S.D.N.Y. 2002) ....................................................................... 8

*Strougo v. Brantley Capital Corp.*
  243 F.R.D. 100 (S.D.N.Y. 2007) ....................................................................... 4

*The Constance Sczesny Trust v. KPMG LLP*
  223 F.R.D. 319 (S.D.N.Y. 2004) .................................................................. 8, 10

## Statutes

15 U.S.C. § 78u-4(a)(3)(A) and (B) ............................................................... passim

Fed. R. Civ. P. 42(a) ............................................................................................ 4

Fed. R. Civ. P. 6(a) .............................................................................................. 5

Fed. R. Civ. P. 23(a) ............................................................................. 2, 4, 8, 10

**INTRODUCTION**

This class action alleges that JPMorgan Chase Bank & Co. and its subsidiaries and affiliates (collectively "JPMorgan") violated the Securities Exchange Act of 1934 by deceptively marketing auction rate securities to investors as cash-equivalent alternatives to money market funds, when they were in fact complex, long-term financial instruments. Most auction rate securities became illiquid on February 13, 2008, when all major broker-dealers abruptly withdrew their "support" of the auction rate securities market.

Before this Court are three motions by Class members seeking consolidation of the above-captioned actions, their appointment as Lead Plaintiff, and approval of their selection of counsel. In the moving papers, the competing applicants identified the following financial interests in this litigation, based on their holdings of illiquid auction rate securities purchased from JPMorgan:

- The Assif Group: $2,375,000;
- The Ciplet Group: $2,400,000; and
- The Shenker Group: $1,150,000.

Although the Ciplet Group purports to have a nominally larger financial interest than the Assif Group, the Ciplet Group is not the "most adequate plaintiff" to represent the class. On July 22, 2008—before these motions were filed—the issuer of $1,000,000 worth of ARS included within the Ciplet Group's "losses" announced that it will redeem those securities in full in the next few weeks. That redemption will reduce the Ciplet Group's holdings to only $1,400,000, substantially below the Assif Group's financial interest. Thus, by the time an amended complaint is filed in this litigation, the Ciplet Group's financial interest will be approximately $1,000,000 less than that of the Assif Group.

1

The Ciplet Group also fails to meet the typicality and adequacy requirements of Fed. R. Civ. P. 23, as required by the Private Securities Litigation Reform Act ("PSLRA"). Unlike other class members, the auction rate securities held by Mark Scharff, a member of the Ciplet Group, <u>remained liquid</u> for five months after the collapse of the auction market. Mr. Scharff's failure to sell his auction rate securities when he had the opportunity subjects him to a unique defense and precludes him from adequately representing the class. Moreover, the Ciplet Group has not retained counsel with sufficient resources to conduct this litigation. The Ciplet Group's counsel includes two firms with only four attorneys. One of those firms ***has no prior experience*** prosecuting complex class action litigation or securities matters and is therefore inadequate to represent the class.

In contrast, the Assif Group has the largest financial interest in this litigation, and meets the typicality and adequacy requirements of Rule 23, it is entitled to the presumption that it is the "most adequate plaintiff" under the PSLRA. Accordingly, for the reasons set forth herein, the Court should appoint the Assif Group Lead Plaintiff and approve its selection of counsel.

## **FACTUAL BACKGROUND**

Plaintiffs allege that JPMorgan deceptively marketed auction rate securities to the members of the Class. Auction rate securities are municipal bonds, corporate bonds or preferred stocks that pay interest or dividends at a rate periodically reset through auctions, typically every 7, 14, 28, or 35 days. Plaintiffs allege that JPMorgan marketed auction rate securities as short-term cash management alternatives to money market funds when they are, in fact, complex long-term investments with maturities of 30 years or more. The auction rate securities that JPMorgan sold appeared to be liquid and stable only because JPMorgan and other broker-dealers were artificially supporting and manipulating the auction market. On February 13, 2008, all major

broker-dealers, including JPMorgan, withdrew their "support" for the auction market, causing the market to collapse. As a result, Class members who had believed they were holding liquid investments became saddled with long-term securities that they are unable to sell.

State and federal regulators are now conducting several probes into the collapse of the auction rate securities market. On August 14, 2008, the New York State Attorney General, the Office of Financial Regulation of the State of Florida, and JPMorgan announced that JPMorgan would buy back approximately $3 billion in auction rate securities from individuals, charities and small businesses. *See* Declaration of Jonathan K. Levine in Response to Competing Motions for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Levine Decl."), Exhibit A (JPMorgan Press Release dated August 14, 2008) (submitted herewith). Under the terms of the regulatory settlement, JPMorgan will also pay compensatory damage claims determined through a special arbitration procedure.

According to information maintained by Thomson Reuters, however, JPMorgan underwrote over $31 billion in municipal auction rate securities. *See* Levine Decl., Ex. B. Moreover, on August 15, 2008, the Regional Bond Dealers' Association notified regulators investigating auction rate securities underwriters that downstream sellers of auction rate securities underwritten by JPMorgan and others believed the underwriters of those securities should be required to repurchase all of the auction rate securities they underwrote. *Id.*, Ex. C. Thus, it remains to be determined whether, when and on what terms the remaining tens of billions of dollars in securities underwritten by JPMorgan will be repurchased from the public.

In addition to the fact that JPMorgan's buyback commitment will not dispose of all claims arising out of JPMorgan's underwriting activity, questions remain about the methods by which JPMorgan determined the sufficiency of the interest paid on auction rate bonds, both

3

before and after the failure of the market, and other unanswered questions about how investors are to be made whole for the losses they have incurred as a result of their investments in auction rate securities. Thus, any suggestion that the announced buyback obviates the need for further legal proceedings is incorrect.

## ARGUMENT

### I. THE COURT SHOULD CONSOLIDATE THE ACTIONS FOR ALL PURPOSES.

The motion to consolidate the cases against JPMorgan pursuant to Fed. R. Civ. P. 42(a) is uncontested. The cases assert substantively similar allegations, name common defendants, and involve the same factual and legal issues. Accordingly, the Court should consolidate the cases.

### II. THE COURT SHOULD APPOINT THE ASSIF GROUP LEAD PLAINTIFF.

The Assif Group holds $2,375,000 in auction rate securities purchased from JPMorgan. The Assif Group respectfully submits that it should be appointed Lead Plaintiff because it has demonstrated the largest financial interest in this litigation and otherwise meet the requirements of the PSLRA and Federal Rule of Civil Procedure 23.

#### A. The Procedure Required by the PSLRA.

Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). "A party is entitled to the statutory presumption of being the most adequate plaintiff if it can show that it: (aa) filed an initial complaint or timely moved for appointment as lead plaintiff; (bb) has the largest financial interest in the relief sought by the class; and (cc) satisfies the typicality and adequately requirements of Rule 23 of the Federal Rules of Civil Procedure." *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104 (S.D.N.Y. 2007) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). The

presumption that a party is the most adequate plaintiff may be rebutted upon establishing that the party "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### B. The Assif Group Is Entitled to the Statutory Presumption of Being the Most Adequate Plaintiff.

#### *1.  The Assif Group Has Complied With the PSLRA.*

As set forth in the Assif Group's initial brief, the notice of the filing of the initial action was published on June 5, 2008. The Assif Group's initial motion for appointment was filed on August 4, 2008, and is thus timely made. *See* 15 U.S.C. § 78u-4(a)(3)(A) and (B); Fed. R. Civ. P. 6(a).

#### *2.  The Assif Group Has the Largest Financial Interest.*

Pursuant to the PSLRA, identification of the most adequate plaintiff "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

To calculate each movant's financial interest in the litigation, the Court should "select accounting methods that are both rational and consistently applied." *Id.* at 730 n.4. For purposes of these motions, the Assif Group submits that the most objective, easily-applied and consistent method to determine the movants' financial interests is to compare the par value of each movant's auction rate securities that were purchased from JPMorgan during the Class Period and held when the auction market collapsed, that remain illiquid, and that are not subject to any

5

previously announced issuer redemptions. None of the other movants suggest that the Court take a different approach.

Among the prospective Lead Plaintiffs, the Assif Group has the largest financial interest in the relief sought by the Class. As described in their initial moving papers, the Assif Group's financial interest is $2,375,000 – the par value of illiquid auction rate securities its members purchased from JPMorgan during the Class Period and held when the auction market collapsed, that were not redeemed after the Class Period and that are not subject to any previously announced issuer redemptions.[1]

According to its moving papers, the Shenker Group's financial interest in the litigation is $1,150,000, which is substantially less than the Assif Group's interest. Thus, the Assif Group is a more adequate Lead Plaintiff than the Shenker Group under the PSLRA.

In its moving papers, the Ciplet Group purports have a financial interest in the litigation of $2,400,000 – approximately one percent more than the Assif Group. But the $2,400,000 claim is illusory. The Ciplet Group's $2,400,000 interest is composed of (1) $1,000,000 in auction rate securities held by Milton Ciplet, and (2) $1,400,000 in auction rate securities held by Mark Scharff and a number of entities that he controls. Mr. Ciplet's auction rate holdings consist entirely of bonds issued by the Triborough Bridge and Tunnel Authority ("Triborough").

On July 22, 2008, Triborough issued a Notice of Redemption announcing that it plans to redeem the bonds prior to maturity.[2] *See* Levine Decl., Ex. D (Notice of Redemption). The

---

[1] None of the securities held by the members of the Assif Group are the subject of issuer sponsored redemptions.

[2] At the Court's August 20, 2008, pre-motion conference Mr. Curtis Trinko, counsel for the Ciplet Group, represented in response to the Court's inquiry that his clients auction rate securities were *not* subject to a redemption. However, the CUSIP number provided by Mr. Trinko after the hearing corresponds to the CUSIP number identified in the Triborough's Notice

CUSIP number for Mr. Ciplet's bonds is 89602N CF9. *See* Levine Decl., Ex. E (letter from counsel for the Ciplet Group dated August 20, 2008). According to Triborough's Notice of Redemption, it will redeem Mr. Ciplet's bonds on September 17, 2008. *See* Levine Decl., Ex. D. Thus, as of the date of redemption in mid-September, Mr. Ciplet will no longer hold any auction rate securities because they will have been redeemed by Triborough. Because a full redemption of Mr. Ciplet's auction rate securities is imminent, the Court should not consider his $1,000,000 in auction rate holdings when it calculates the Ciplet Group's financial interest. Absent Mr. Ciplet's holdings, the Ciplet Group's financial interest is only $1,400,000, substantially lower than the Assif Group's financial interest of $2,375,000.

Mr. Ciplet might argue that Triborough's planned redemption of his auction rate securities is the functional equivalent of JPMorgan's securities plan to buy back auction rate securities from its clients as part of a settlement with state regulators. But Triborough's Notice constitutes a formal notice of redemption that does not appear to be revocable, and the redemption right is an inherent characteristic of the underlying securities that is grounded in the offering documents. *See* Levine Decl., Ex. D. In other words, the issuer's redemption was contemplated by the original offering and is consistent with proper operation of the securities. In contrast, the JPMorgan announcement is an agreement in principle to buy back securities on specific terms that remain to be determined. Triborough's formal redemption offer cannot be equated with JPMorgan's press release announcing its agreement in principle to re-purchase auction rate securities from its clients.

Because Mr. Ciplet's auction rate securities are the subject of an announced redemption by Triborough, the Court should discount the Ciplet Group's financial interest by that same

---

of Redemption. *Compare* Levine Declaration, Ex. D *and* Levine Decl., Exhibit E.

amount. Doing so reduces the Ciplet Group's financial interest to $1,400,000. As the Assif Group's financial interest in the litigation is $2,375,000, it has the largest financial interest in the litigation.

### 3. *The Assif Group Is Better Suited to Be Lead Plaintiff Under Rule 23.*

Whether or not the Court agrees that Ciplet Group's financial interest should be adjusted to reflect the redemption of the Triborough bonds, the Ciplet Group's approximately one percent higher stake in the litigation is nominal, and the competing groups essentially have the same financial interest for purposes of consideration of the "largest financial interest" under the PSLRA. But a purely quantitative analysis is not dispositive, because "the most adequate plaintiff is not necessarily the class member with the largest financial interest in the action, but rather the class member with the largest financial interest in the action who . . . *otherwise meets the requirements of Rule 23.*" *In re Initial Public Offering Securities Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (emphasis added); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (listing financial interest as merely one factor courts must consider in appointing a lead plaintiff). Under the requirements of Rule 23, the Assif Group is the most adequate Lead Plaintiff.[3]

#### a. Typicality.

Typicality exists if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *The Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004). Moreover, the PSLRA's text recognizes that a party is not an adequate lead plaintiff if the party's claim "is subject to unique defenses that render such plaintiff incapable of adequately representing the

---

[3] Because the Shenker Group cannot satisfy the statutory requirement of the largest financial interest, the Assif Group will focus only on the Ciplet Group's qualifications under Rule 23.

class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

In this case, the unique circumstances surrounding the Ciplet Group's investments in auction rate securities disqualify them from serving as Lead Plaintiff. As outlined above, Mr. Ciplet's entire auction rate securities holdings are subject to an issuer-sponsored redemption that is scheduled to occur in mid-September. Thus, because his auction rate holdings will be liquid shortly, Mr. Ciplet is not typical of most Class members whose auction rate securities holdings will remain illiquid.[4]

Similarly, Mr. Scharff's claims against JPMorgan are equally atypical. According to the declaration submitted in support of the Ciplet Group's initial brief, Mr. Scharff's auction rate securities holdings include bonds issued by the South Tennessee Education Loan Authority ("the Tennessee Bonds"). *See* Declaration of Curtis Trinko, Ex. C. The Tennessee Bonds account for $600,000 of Mr. Scharff's $1,400,000 auction rate securities holdings. *Id.* The CUSIP number for these bonds is 28148NBP7. *See* Levine Decl., Ex. E. According to Bloomberg news databases, auctions related to the Tennessee Bonds *did not begin to fail until July 29, 2008* – over five months after the vast majority of the auction rate securities market collapsed in February 2008 and approximately 8 weeks after he filed his own action. *See* Levine Decl., Exhibit F (report from Bloomberg database). Thus, Mr. Scharff's auction rate bonds did not become illiquid until five months after the initial collapse of the auction rate market. JPMorgan will undoubtedly argue that Mr. Scharff is atypical because he failed to tender his auction rate securities for sale even after the widespread failures of February 2008. In this respect, Mr. Scharff's claim – to the extent it is premised on the Tennessee Bonds – "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §

---

[4] Again, any buy-back by the broker dealer does not confer the same rights as an issuer buy-back made pursuant to the original offering.

78u-4(a)(3)(B)(iii)(II).[5]

Unlike the Ciplet Group, the members of the Assif Group are typical of the Class they seek to represent. Their claims and the claims of all other Class members arise out of their purchases of auction rate securities from JPMorgan during the Class Period as a result of JPMorgan's materially false and misleading statements and omissions about the liquidity and risk characteristics of those securities and the auction market. Thus, the Assif Group is the more appropriate Lead Plaintiff under the typicality prong of Rule 23.

### b.   Adequacy.

"Adequacy of a proposed lead plaintiff turns on whether that plaintiff 'will fairly and adequately protect the interests of the class.'" *Sczesny Trust*, 223 F.R.D. at 324 (quoting Fed. R. Civ. P. 23(a)). To determine adequacy, courts scrutinize "(1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims." *Id.* (internal quotations omitted).

The Assif Group's interests are not antagonistic to the rest of the Class, and its interest in the litigation is sufficient to ensure that it will prosecute this action vigorously. The Assif Group has retained three firms with over 40 attorneys available to assist in the litigation. The Assif Group's counsel are experienced in securities matters and are able and prepared to commit the resources necessary to prosecute the litigation. The firms representing the Assif Group have been working full-time on the auction rate securities litigation and have already been named Lead Counsel in the auction rate cases pending in this and other Districts against UBS (Judge

---

[5]   Mr. Scharff filed his Complaint with this Court on June 2, 2008 – almost two months before the Tennessee Bonds became illiquid. *See* Levine Decl., Ex. G (ECF docket sheet).

McKenna), Wachovia (Judge Scheindlin), E*Trade (Judge Stein), Raymond James (Judge Kaplan), and Bank of America (Judge White, Northern District of California). Levine Decl. at ¶ 10.[6] As the Assif Group's counsel are steeped in the complexities of auction rate securities and the related legal issues, they can litigate the claims against JPMorgan more efficiently and with greater resources than counsel who are approaching the litigation on a "one-off" basis.

While the proposed counsel selected by the Ciplet Group are certainly reputable attorneys, there are real questions about the sufficiency of the Ciplet's Group's resources given the scope and complexity of this litigation. The Ciplet Group requests that the Court appoint Marc Scollar as lead counsel. According to his firm resume, Mr. Scollar has *no experience* litigating complex class actions and has not prosecuted a single securities fraud case. *See* Declaration of Marc Scollar, Exhibit D. Mr. Scollar works primarily on appellate work, landlord/tenant, and family court cases. *Id.* He also handles real estate matters and commercial contracts. *Id.* According to Mr. Scollar's Declaration, his firm focuses on transactional work including "title issues." *Id.* at ¶¶ 6-7. Although Mr. Scollar professes to have represented parties in "several Federal Court actions," a search of this Court's ECF system reveals that this case is the only matter where he has served as counsel in this District. *Id.*; Levine Decl., Ex. H.

Mr. Scollar is a sole practitioner who also owns a title abstract company and is a small claims arbitrator – two activities that presumably consume considerable amounts of time. *Id.*; Declaration of Marc Scollar at ¶ 7. Although Marc Scollar's declaration identifies his father as an "informal partner" with "a wealth of experience in all legal matters," the declaration does not specify whether his father is formally associated with the Scollar firm, if his father plans to

---

[6] The Assif Group's counsel has also moved for coordination of all auction rate securities litigation before the Judicial Panel on Multidistrict Litigation.

actively participate in the litigation, or if his father still actively practices law. *Id.* at ¶ 8. In sum, Mr. Scollar appears to lack the qualifications, experience and resources necessary to litigate this case and adequately protect the interests of the class.

The Ciplet Group also asks the Court to appoint the Law Offices of Curtis Trinko, LLP as Lead Counsel. According to its resume, the firm has only one partner and two associates, one of whom has been licensed to practice law for only two years. The Trinko firm is in no position to make up for the limited resources and experience of the Scollar firm. Briefing and discovery in this case will require substantial resources. Comparatively, the proposed counsel for the Assif Group have substantial experience representing parties in securities litigation and other complex cases including several auction rate securities class actions, and have the resources to pursue all necessary discovery and fully prosecute this case. *See* Exhibits D-F to Levine Declaration Dated August 21, 2008.

### III.   THE COURT SHOULD APPROVE THE ASSIF GROUP'S CHOICE OF COUNSEL.

The Assif Group has selected three law firms to represent the Class in this matter, subject to Court approval: Girard Gibbs LLP as Lead Counsel, Stueve Siegel Hanson LLP as Co-Lead Counsel, and Seeger Weiss LLP as Liaison Counsel. As show in the firm resumes filed with the Assif Group's initial moving papers, all three firms have extensive experience in complex class actions and securities litigation on behalf of investors. The firms have been instrumental in investigating this matter since the collapse of the auction rate securities market in February 2008. Accordingly, the Court should approve the Assif Group's selection of counsel.

### CONCLUSION

For the foregoing reasons and those stated in their moving papers, the Assif Group respectfully request that this Court: (1) consolidate the actions identified herein for all purposes;

(2) appoint the Assif Group Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(i); and (3) approve their selection of counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

DATED: August 28, 2008

Respectfully submitted,

**GIRARD GIBBS LLP**

By: *Jonathan K. Levine*
     Jonathan K. Levine (JL-8390)

Daniel C. Girard (*pro hac vice*)
Aaron M. Sheanin
Christina H. C. Sharp
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4500
Facsimile: (415) 981-4846

**Proposed Lead Counsel**

Norman E. Siegel
Matthew L. Dameron
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO, 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

**Proposed Co-Lead Counsel**

Christopher A. Seeger (CS-4880)
Stephen A. Weiss (SW-3520)
David R. Buchanan (DB-6368)
**SEEGER WEISS LLP**
One William Street, 10th Floor
New York, NY 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

**Proposed Liaison Counsel**

## CERTIFICATE OF SERVICE

I, Jonathan K. Levine, hereby certify that on August 28, 2008, I caused the following document(s) to be filed electronically with the United States District Court for the Southern District of New York through the Court's mandated ECF service:

**RESPONSE OF THE ASSIF GROUP TO COMPETING MOTIONS FOR CONSOLIDATION OF ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of August, 2008 at San Francisco, California.

_/S/ Jonathan K. Levine_